IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


JUAN VITAL,

        Petitioner,

v.                                                                        CIV 00-845 JP/KBM

LAWRENCE A. TAFOYA, Warden, and
PATRICIA A. Madrid, Attorney General,

        Respondents.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Juan Vital's Petition for a Writ of Habeas Corpus under

28 U.S.C. § 2254 and motion for appointment of counsel *(Docs. 1 & 16)*, and Respondents'

Answer and Supplement *(Docs. 10 & 14)*.  Because Vital filed after the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards[1] apply to this

case.  *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999).  All of the issues can be

resolved on the record, such that an evidentiary hearing is unnecessary.  *E.g., Trice v. Ward,* 196

F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 93 (2000); Rule 8(a), *Rules Governing*

*Habeas Corpus Under Section 2254.*  Having considered the arguments, pleadings, and relevant

law, I find the petition without merit and recommend that it be denied.

---

[1]  A federal court cannot grant a writ of habeas corpus unless: (1) the state court decision
is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or
(2) is "an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C.
§§ 2254(d)(1)-(2); *see also  Williams  v. Taylor,* 529 U.S. 362, 120 S. Ct. 1495 (2000); *Van
Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied,* 121 S. Ct. 1117
(2001).

## I.  Charges and Plea

A one-count indictment dated April 18, 1996 and captioned 96-1249 charged Vital with trafficking cocaine.  *Answer, Exh. B.*[2]  An eight-count indictment dated November 8, 1996 is captioned 96-3481.  Among other things, Count 1 of this later indictment charged Vital with the murder of Richard Jurado.[3]  Count 3 charged him with attempted murder ***or, in the alternative,*** aggravated battery in that "defendant did touch or apply force to Michael Bowser, with a knife, which was a deadly weapon."  *Exh. F* (emphasis added).[4]  A one-count information filed the day of his plea, also captioned 96-3481, charged Vital with second degree murder: "defendant did murder Richard Juardo . . . and used a firearm."  *Exh. G.*  Finally, a single count indictment dated August 20, 1997 and captioned 97-2672 charged Vital with possession of a deadly weapon while imprisoned.  *Exh. O.*

The prosecutor set forth the facts underlying the murder charges at the February 27, 1998 plea hearing.  When a street brawl erupted, Vital and his acquaintances and/or friends[5] joined in.  Vital's friends "took out screwdriver or knife-type weapons, one or two weapons, and Mr. Vital, himself, was the only person identified by several witnesses, who spoke to police about this case -- he was the only person identified  in that group of people fighting as possessing a handgun."  *Supplement, Transcript* at 7 [hereinafter *Transcript*].  Petitioner initially shot in the air and

---

[2]  Unless otherwise noted, all citations to exhibits are those attached to Respondents' Answer.

[3]  This name is alternatively spelled "Jurado" and "Juardo."  I use the latter.

[4]  Counts 2 and 4 charged him with conspiracy to commit murder.  Count 5 charged him with shooting at a dwelling.  Count 6 charged him with aggravated assault with a deadly weapon. Counts 7 and 8 charged him with tampering with evidence.

[5]  For ease of reference, I will call these fellows "friends."

pointed a gun at the opposing combatants.

Bowser, who had been stabbed by one of Vital's friends, tried to leave the scene.  As he attempted to leave, Vital shot at him but missed.  Shortly thereafter, Vital encountered Juardo and began pursuing him: "At least two witnesses . . . will testify at trial that they saw Mr. Vital . . . chasing Richard Juardo in sort of a circle . . . that he was saying words like 'dance' in Spanish; that [he shot] at the feet of Mr. Juardo."  *Id.* at 8.  When Juardo ran toward an apartment complex, a woman crouching for cover heard two or three shots prior to the victim shouting out "aye, aye" as if he was in pain.  *Id.*  Juardo then shouted pleas for help and ran into an apartment, where witnesses described him "dying on the floor."  Juardo was pronounced dead at U.N.M. hospital.  *Id.* at 9.

Defendant entered an "*Alford*" plea.  *See North Carolina v. Alford*, 400 U.S. 25, 37-39 (1970).  The written agreement, signed by Vital the same day as his plea hearing, explained that he faced a total of thirty-five years incarceration for murdering Juardo, attempting to murder Bowser, trafficking cocaine, and possessing a weapon while in prison.  In exchange for his plea of guilty to these four crimes, the State agreed to a twenty-seven year cap on his sentence and to dismiss the other charges.  *Exh. D.*  On July 27, 1998, the trial judge sentenced Vital to thirty-five years incarceration and suspended eight years for a total of twenty-seven years.  *Exh. A.*

## II.  Procedural Background

Shortly after being sentenced, Vital filed a *pro se* motion for leave to withdraw his plea on the ground that it was involuntary.  He requested a hearing and that a Spanish interpreter be provided.  *Exh. L.*  After reviewing a draft of the plea transcript, in October 1998 the trial judge denied the motion without a hearing saying "a review of the transcript of the plea . . . clearly

3

shows that the plea was voluntary and knowingly done." *Exh. M.*

Vital then filed a petition seeking state habeas relief on federal constitutional grounds.  He raised four claims:  (1) the plea was involuntary; (2) he was incompetent to enter the plea; (3) lack of factual basis for the plea; and (4) ineffective assistance of counsel.  *See Exh. Q; Supplement, Petition* [hereinafter *Complete Petition*].  The trial judge summarily denied the petition indicating only that the "same matter" had been previously submitted, and that he had found that the plea hearing transcript "clearly showed that the plea was voluntary and knowingly done."  *Exh. R.*

Vital sought review of this ruling and claimed that the trial judge erred by failing to hold an evidentiary hearing, not appointing counsel, and in denying relief on his claims.  *Exh. S.*  The New Mexico Supreme Court summarily denied certiorari on June 16, 1999.  *Exh. T.*  Vital timely filed this federal petition that raises the same four grounds he raised in his state habeas petition.  *Doc. 1.*[6]

### III.  Analysis

Petitioner argues that his right to procedural due process was violated because the indictment charged him with attempting to murder Bowser with a knife, but the prosecutor referred only to Vital's use of a gun during the plea hearing, thereby failing to establish a factual basis for a guilty plea to this charge.  This claim is without merit because the reference to the knife in the indictment applied only to the aggravated battery alternative.  *See Exh. F.*  Vital pleaded to

--------

[6] He also raises a fifth claim, that trial judge erred in not ordering an evidentiary hearing or appointing counsel during the state habeas proceeding.  Those state procedural issues are not cognizable in federal habeas, however.  *E.g., Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (federal habeas court's review limited to whether a state court conviction violated federal constitution).

the other charge – attempted murder of Bowser.  The attempted murder charge did not mention a knife or any other weapon used in the attempt.

The majority of the remaining claims relate to the plea.  "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).  A federal habeas court "will uphold a state court guilty plea on federal review if the circumstances demonstrate that the defendant understood the nature and the consequences of the charges against him and that the defendant voluntarily chose to plead guilty ."  *Miles v. Dorsey,* 61 F.3d 1459, 1466 (10th Cir. 1995) (citing *Boykin v. Alabama,* 395 U.S. 238, 242-44 (1969)), *cert. denied,* 516 U.S. 1062 (1996).  Moreover,

> Solemn declarations in open court carry a strong presumption of verity.  *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).  Responses in a plea hearing are subject to challenge, but they constitute a formidable barrier in any subsequent proceedings.  *Worthen v. Meachum,* 842 F.2d 1179, 1183 (10th Cir. 1989).  Further, a defendant's statements at a plea hearing should be regarded as conclusive as to truth and accuracy in the absence of a believable, valid reason justifying a departure from the apparent truth of these statements.  *See, Hedman v. United States,* 527 F.2d 20, 22 (10th Cir. 1975).  It is in the light of Petitioner's responses at the . . . plea hearing in New Mexico District Court that his claim of an involuntary plea is considered.

*Ramer v. Thomas,* 61 F.3d 916 (10th Cir. 1995) (unpublished) (quoting from Proposed Findings and Recommended Disposition in *Ramer v. Thomas,* CIV 91-351 JC/DJS that the Tenth Circuit attached to its affirmance), *cert. denied,* 517 U.S. 1145 (1996).

During the plea proceeding, the trial judge and Vital had the following conversation:

> THE COURT:  Mr. Vital, I have in front of me an information which I'm marking 'filed in open court' on this date.  Have you had a chance to review that with your attorney?

THE DEFENDANT:  Yes, Your Honor

THE COURT:  And you're aware of the charges of second degree murder in that information?

THE DEFENDANT:  Yes.

THE COURT:  Also, I have a waiver of Grand Jury, and you have the right to have that matter presented to the Grand Jury, but that can be waived, and is your wish to waive?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you doing that after discussing it with your attorney?

THE DEFENDANT:  Your Honor, I just wish I had had some more time to think about it, because they just gave me that plea yesterday.

THE COURT:  I'm not going to take the plea, unless you want me to.  I want this to be voluntary on your part, and if you don't want to take it, that's fine.

THE DEFENDANT:  But then my trial will be starting Monday.

THE COURT:  Yes.

THE DEFENDANT:  If the plea ain't going to be, I just wish I had some more time to think, because they just gave it to me yesterday, you know what I mean?

THE COURT:  Well, we have a problem of 60 jurors coming, the problem of all of the witnesses being subpoenaed and brought here and some of those things, but I'm not going to take your plea unless [you] want me to take that plea.

THE DEFENDANT: Yeah, I guess so.

THE COURT:  So what do you wish to do?

THE DEFENDANT:  I'll take it.

THE COURT:  You'll take what?

THE DEFENDANT:  The plea.

THE COURT:  All right.  And you're doing this of your own free will?  I'm not trying to coerce you in any way.  In fact, I'm going to explain your rights to you, and if you don't understand or you don't wish to give up those rights, then just let me know, okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  [Explains rights] . . . .  Do you wish to give up a trial?

THE DEFENDANT:  Yes, sir.

THE COURT:  If we'd had a trial and you were found guilty, you'd have a right to an appeal to the Court of Appeals, but if you plead guilty, again, you're giving up that right of any chance you have to -- for an appeal; do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has anybody threatened you in any way to make

6

you do this?
THE DEFENDANT:  No.
THE COURT:  Are you doing this of your own free will?
THE DEFENDANT:  Yes.
THE COURT:  Has anybody made you any promises to get you to
do this other than what appear here in the plea and disposition
agreement.
THE DEFENDANT:  No.
THE COURT:  Have you gone over that agreement with your
attorney?
THE DEFENDANT:  Yes.
THE COURT:  Do you feel you fully understand what's contained
in that agreement?
THE DEFENDANT:  Yeah.
THE COURT:  Do you understand that if you plead guilty in this
case, that the court would be required by law to sentence you to at
least two years, but I could sentence you up to 35 years, and that
the State has agreed that I couldn't sentence you to any more than
27 years of prison, confinement; do you understand that?
THE DEFENDANT:  Yes.
THE COURT:  So you're looking at anywhere from 2 to 27 years;
do you understand that?
THE DEFENDANT:  Yes.

*Transcript* at 1-3.

Petitioner argues that the plea was involuntary because it was presented on the eve of trial

and because his attorney coerced him into accepting it by telling him he would have "no chance of

convincing a jury of his innocence" and that "an all white jury would be seated."  *Doc. 1* at 5.

However, neither of these stressors attendant with a criminal proceeding – impending trial or

counsel's strong persuasion and urging – are sufficient to vitiate a voluntary plea.  *See United

States v. Carr,* 80 F.3d 413, 417 (10th Cir. 1996) (allegations that counsel hounded, browbeat,

and yelled at Defendant calling him "stupid" and "a f***ing idiot," held to be "palpable pressure"

but did not make the plea involuntary); *Miles,* 61 F.3d at 1470 (citing cases for propositions that

attorney's persuasion, "strong urging" and "threat to withdraw from case if client did not accept

plea bargain" insufficient to render plea involuntary).

In state court, Vital asserted that "on several occasions [he] attempted to dismiss his attorney for her unwillingness to allow him to aid her in his defense." *Exh. Q* at 4; *Complete Petition.* In support of this contention, Vital cites to Exhibits C and D attached to his state petition, *see Complete Petition*, and mentions alleged attempts to dismiss his attorney in his federal habeas petition as well, *Doc. 1* at 6. However, the record simply does not support this assertion.

Neither the docket sheet of the state proceedings, nor the transcript of the plea hearing, reflect that Vital ever expressed dissatisfaction with his attorney or made any attempt to have her dismissed until months after he had entered his *Alford* guilty plea. The exhibits relied upon by Petitioner consist of a June 1, 1998 letter to the trial judge in Spanish and its English translation. The letters were neither noted on the docket sheet nor filed in the criminal case record. Even if the trial judge did receive them, the documents were written long after Vital's February 1998 plea but before his sentencing in July 1998. *See Supplement, Docket Sheet.* Plainly, the letter was either an attempt for leniency at sentencing or intended to set the stage for the motion to withdraw the plea which was filed August 13, 1998, just weeks after the sentencing.

Vital also asserts that he was "incompetent" to enter a plea because "the charges and possible sentence were not interpreted to him in language he could understand," and because he was under the influence of heroin at the time the plea was entered. In the state proceedings, Vital indicated that the amount of heroin he allegedly ingested was "moderate." In his federal petition, he drops any reference to the amount ingested. *Compare Exh. Q* at 6, *with Doc. 1* at 5. Yet, merely ingesting a "moderate" amount of heroin does not automatically result in a finding of

incapacity.  In *Miles,* the Tenth Circuit explained that the "standard for determining competency

to enter a guilty plea is the same as that  required to determine competence to stand trial" –

"whether the defendant has sufficient present ability to consult with his lawyer with a reasonable

degree of rational understanding and has a rational as well as factual understanding of the

proceedings against him."  *Miles,* 61 F.3d at 1472 & n.12 (internal quotations omitted) (quoting

*Godinez v. Moran,* 509 U.S. 389 (1993) and *Dusky v. United States,* 362 U.S. 402 (1960)).  In

the *Miles* case, the court held that "Petitioner's history of mental problems, low intelligence,

psychotropic medication, and substance abuse do not establish that he was incompetent to plea ."

*Id.* at 1474.

Petitioner urged this Court to consult the plea proceeding transcript and I have done so.

Vital made no indication at the plea hearing that he did not understand the plea agreement or the

English language.  To the contrary, the transcript belies any basis in fact for his assertions that he

was rendered temporarily incapacitated by heroin or that he does not understand English.  Finally,

conclusory assertions are insufficient to support habeas relief.  *E. g., Hatch v. Oklahoma,* 58 F. 3d

1447, 1469 (10th Cir. 1995) ("to warrant relief, or, as an initial matter, even an evidentiary

hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim")

(internal quotations omitted), *cert. denied,* 517 U. S. 1235 (1996).

In the guilty plea context, to establish ineffective assistance of counsel under *Strickland v.

Washington,* 466 U. S. 668 (1984), a defendant must show that: (1) his counsel's performance

was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's

errors, he would not have pled guilty and would have insisted on going to trial.  Vital makes a

number of claims of ineffectiveness including: coercing his plea, failing to investigate and prepare

for trial, inadequately explaining the charges, and failing to ask for an interpreter.

For the reasons set forth above, I find counsel's conduct was not deficient.  More importantly, Petitioner does not allege that he would have insisted on going to trial or make any showing that he would have been acquitted.  As the Tenth Circuit recently reiterated in an unpublished opinion:

> this court has explained that "in order to demonstrate prejudice, [a state habeas petitioner] . . . must show that, had he rejected the State's plea bargain, the outcome of the proceedings 'likely would have changed.'  Thus, we must determine whether it is likely that a jury would have acquitted . . . [the petitioner of the crime to which he pled guilty ]."  *Miller v. Champion,* 161 F.3d 1249, 1256-57 (10th Cir. 1998) (quoting *Hill,* 474 U.S. at 59); *see also Braun v. Ward,* 190 F.3d 1181, 1188 (10th Cir. 1999) (reciting same test under AEDPA standard of review); *United States v. Kane,* No. 98-3241, 1999 WL 448818 (10th Cir. July 2, 1999) (unpublished) (applying test in § 2255 proceeding).

*Berry-Gurule v. Lucero,* 215 F.3d 1336 (10th Cir.) (unpublished), *cert. denied,* 121 S. Ct. 399 (2000).  This is the same standard that Vital acknowledged was his burden in the state proceeding.  *See Exh. Q* at 9-10.  However there, as here, he fails to make even a hint of any such showing.

Accordingly, I find all of Petitioner's claims without merit and that the state decision is neither contrary to nor an unreasonable application of Supreme Court precedent.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** the petition be dismissed with prejudice and Petitioner's motion for appointment of counsel be denied.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day**

**period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

UNITED STATES MAGISTRATE JUDGE